DUNHAM *v.* DEY, 15 J. R. 555.

In Ch. 2 J. C. R. 188.

*Recording Deed given as Mortgage ; Priority of Mort-
gage ; Notice to purchaser ; Defeasance.*

THIS was a bill brought by Dey, trustee and assignee of
W. and W. to set aside a conveyance which the assignors
had previously executed to Dunham the appellant. The
deed was recorded and was accompanied by a *defeasance*
which was not recorded at the time of the assignment to
Dey. The deed was given as a security for the payment of
certain promissory notes which *Dunham* had endorsed, for
the grantors' accommodation and which were from time to
time renewed ; they paying or agreeing to pay two and one-
half per cent. to Dunham as a commission for his endorse-
ment, but which did not for the time the notes had run, ex-
ceed the legal rate of interest. W. and W. becoming em-
barrassed made an assignment of all their property to Dey,
in trust for creditors &c. without a particular description of
their real estate in the body of the deed, but a schedule an-
nexed specified certain " *lots of ground* in S. street, the
title to which is in David Dunham, as *collateral security to
pay certain notes.*" On the hearing of the cause on plead-
ings and proofs,

The *Chancellor* decreed the conveyance to Dunham to
be inoperative as against the assignee. He held the charge of
two and one half per cent. commission, not to be usurious, but
ordered the deeds to be given up on the ground that the deed
with a defeasance which was not recorded, could not oper-
ate as a mortgage to take priority of the assignment: that to
do so, it must have been recorded *as a mortgage :* that
a subsequent purchaser is not bound to search the record of
*deeds* to be protected against a mortgage : That the record
of an absolute deed, *as such,* is no notice to the pur-
chaser and that a notice which was merely sufficient to
put a party on inquiry, is not sufficient to break in on the

registry act; and that the assignee therefore in trust for creditors stands in the character of a *bona fide* purchaser without actual notice of an unregistered mortgage. On appeal from this decree,

The *Court of Errors* reversed the Chancellor's decision : holding that the notice contained in the schedule, that the " title of the lots was in D. D. as *collateral security to pay certain notes*, was sufficient *notice* to the assignee of the existence of the prior mortgage to D. D. though the defeasance was not recorded : and that by having his conveyance first recorded, the assignee could not obtain a priority and defeat the deed given as a mortgage.

☞ The reporter adds the following note to the report of this case. " The only point determined in the court below, declared to be erroneous by the decree of reversal was that, as to the sufficiency of the *notice* (by the schedule) to the respondent of the prior deed to the appellant, the defeasance to which was not recorded at the time of the assignment by the W.'s to Dey the respondent in trust."

This is unquestionably correct, but *the point of notice* was the only one really made and determined in the court below.

As to the question of usury which was moved in the case, that defence came directly before the Supreme Court, in a suit upon one of the notes thus endorsed by Dunham, referred to in the above case. The judge at the circuit having left it to the jury to say whether the commission of two and one half per cent. for endorsing was or not taken with a usurious intent and of evading the statute, the jury found for the defendant Gould. The *Supreme Court* confirmed the verdict, and the *Court of Errors* affirmed the judgment of the Supreme Court. See *Dunham* v. *Gould*, 16 J. R. 367.

But in the case of *Trotter and others* v. *Curtis*, 19 J. R. 160, the *Supreme Court* held that where the plaintiff was in the habit of receiving *produce* for the defendant, a country merchant, and transporting it to New York, and accepting his drafts, with the engagement that the produce should

be placed in their warehouse, before the drafts became pay-able : on which acceptances the plaintiffs charged a com-mission of *two and one half per cent. on all advances* made by them to meet the drafts, where the defendant had no funds in their hands and interest ; the *Supreme Court* held that the commissions were not usurious, but a customary allowance for the trouble and inconvenience of transacting the business.